## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

UNITED STATES OF AMERICA,

                Plaintiff,

      v.

KENNETH L. THOMPSON (01),

                Defendant.

Case No. 20-20062-01-DDC

## MEMORANDUM AND ORDER

This matter comes before the court on Kenneth Thompson's pro se[1] motion to modify his sentence under 18 U.S.C. § 3582(c)(1)(A) (Doc. 109) and Motions to Appoint Counsel (Docs. 110, 114). The court denies Mr. Thompson's motions and explains this decision, below.

## I.      Background

On December 9, 2021, Mr. Thompson entered a guilty plea to one count of conspiracy to distribute and possess with intent to distribute 50 grams or more of methamphetamine, violating 21 U.S.C. §§ 846, 841(a)(1), and 841(b)(1)(A)(viii). Doc. 98 at 1. On March 29, 2022, the court sentenced him to 144 months' imprisonment, 10 years' supervised release, and $100 special assessment. *Id.* at 2. Today, Mr. Thompson is incarcerated at Leavenworth Federal Prison Camp in Leavenworth, Kansas. *See* Kenneth L. Thompson (Reg. No. 06783-031) (last visited October 26, 2023), https://www.bop.gov/inmateloc/. His projected release date is April 14, 2030. *Id.*

---

[1]       Because Mr. Thompson proceeds pro se, the court construes his filings liberally and holds them to a less stringent standard than formal pleadings drafted by lawyers. *See Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). But the court does not assume the role of advocate for a pro se litigant. *Id.*

Mr. Thompson filed his Motion for Compassionate Release (Doc. 109) and Motion to Appoint Counsel (Doc. 110) on February 14, 2023.  The court received his Second Addendum (Doc. 102) to his compassionate release motion on February 2, 2023.  Doc. 107 at 1.  The government responded to both motions on March 6, 2023.  Doc. 111.  Mr. Thompson then filed a Renewed Motion for Appointment of Counsel on March 15, 2023 (Doc. 114) and replied to the government's response on March 27, 2023 (Doc. 119).  The government then responded (Doc. 123) to Mr. Thompson's renewed motion on May 25, 2023, and Mr. Thompson replied again (Doc. 124) on June 6, 2023.  Also, Mr. Thompson has filed six notices with the court—four providing supplemental authority (Docs. 121, 125, 126, 129) and two more providing supplemental facts (Docs. 127, 128).

With all this background firmly in mind, the court first addresses Mr. Thompson's request that the court appoint him counsel.

## II.    Appointment of Counsel

Mr. Thompson filed multiple Motions to Appoint Counsel.  Docs. 110, 114.  He also asked the court to stay these proceedings until he can consult with his appointed attorney.  Doc. 114 at 3.  "There is no constitutional right to counsel beyond the direct appeal of a criminal conviction[.]"  *Coronado v. Ward*, 517 F.3d 1212, 1218 (10th Cir. 2008).  But our court has arranged for appointment of counsel for certain indigent defendants who have filed motions for compassionate release under § 3582(c)(1)(A).  District of Kansas Standing Order 19-1 appoints the Federal Public Defender (FPD) to represent indigent defendants who may qualify to seek compassionate release under § 603 of the First Step Act.  Administrative Order 20-8 supplements 19-1 and establishes procedures to address compassionate release motions brought on COVID-19 grounds.  Under 20-8, the FPD has 15 days to notify the court whether it intends to enter an

appearance on behalf of any pro se individual filing a compassionate release motion based on COVID.

To say the least, more than 15 days have passed and the FPD hasn't notified the court that it intends to enter an appearance to represent Mr. Thompson.  And Mr. Thompson's filings demonstrate that he, acting pro se, can present his claims effectively.  *See Williams v. Meese*, 926 F.2d 994, 996 (10th Cir. 1991) (reciting "the litigant's ability to present his claims" as a factor to consider when deciding whether to appoint counsel).  In its discretion, the court thus declines to appoint Mr. Thompson counsel.  This moots Mr. Thompson's request that the court stay the case to give him time to consult with counsel.

At the end of Mr. Thompson's Renewed Motion to Appoint Counsel, he also requests an evidentiary hearing.  Doc. 114 at 5.  He doesn't explain why his motion requires an evidentiary hearing.  *See generally id.*  Whether to hold an evidentiary hearing is a decision committed to the district court's discretion.  *United States v. Pinson*, 835 F. App'x 390, 395 n.6 (10th Cir. 2020).  And compassionate release motions don't require a hearing.  *United States v. Hemmelgarn*, 15 F.4th 1027, 1032 n.3 (10th Cir. 2021).  The court, in its discretion, denies this request.

The court next recites the legal standard governing compassionate release motions.

## III.    Legal Standard

"Federal courts are forbidden, as a general matter, to modify a term of imprisonment once it has been imposed, but [this] rule of finality is subject to a few narrow exceptions.  One such exception is contained in [18 U.S.C.] § 3582(c)(1)."  *United States v. Maumau*, 993 F.3d 821, 830 (10th Cir. 2021) (quotation cleaned up).  This exception permits district courts to modify a term of imprisonment "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the

defendant's facility, whichever is earlier[.]"  18 U.S.C. § 3582(c)(1)(A); *see also Maumau*, 993 F.3d at 830–31 (reviewing § 3582(c)(1)'s history, text, and requirements).  Our Circuit has held that this exhaustion requirement is a claim-processing rule that the government may waive or forfeit.  *Hemmelgarn*, 15 F.4th at 1030–31.

Separate from this exhaustion requirement, the court applies a three-step substantive analysis to motions filed under § 3582(c)(1)(A).  *United States v. McGee*, 992 F.3d 1035, 1042 (10th Cir. 2021).  The court may grant a motion for reduction of sentence only if "(1) the district court finds that extraordinary and compelling reasons warrant such a reduction; (2) the district court finds that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; and (3) the district court considers the factors set forth in [18 U.S.C.] § 3553(a), to the extent that they are applicable."  *Id.*  Relief may "be granted only if all three prerequisites are satisfied," and so, "the three steps [can] be considered in any order."  *United States v. Hald*, 8 F.4th 932, 942 (10th Cir. 2021).  The Tenth Circuit has held that it doesn't view the first step in § 3582(c)(1)(A)—"extraordinary and compelling" reasons—as jurisdictional.  *See Hald*, 8 F.4th at 942 n.7 (declining "to read a jurisdictional element into § 3582(c)(1)(A)'s 'extraordinary and compelling reasons' requirement when the statute itself provides no indication (much less a 'clear statement') to that effect").

Here, the court needn't address the second step of the analysis because the Sentencing Commission hasn't issued an "applicable policy statement" for defendant-filed compassionate release motions, like this one.[2]  *Maumau*, 993 F.3d at 837.

---

[2]      "On April 27, 2023, the United States Sentencing Commission submitted to Congress a proposed amendment to U.S.S.G. § 1B1.13, which is the policy statement that applies to motions for compassionate release.  Absent congressional action to the contrary, the proposed amendment will go into effect on November 1, 2023."  *United States v. Read-Forbes*, No. CR 12-20099-01-KHV, 2023 WL 6961985, at *5 (D. Kan. Oct. 20, 2023) (internal citation omitted).

IV.     **Analysis**

As a threshold matter, the court addresses Mr. Thompson's request that the court reduce his sentence because he suffered "atrocious conditions" while in pretrial custody—conditions that resulted in "Eighth Amendment and Civil Rights transgressions[.]"  Doc. 109 at 1.  Mr. Thompson asserts that the pretrial detention facility, Core Civic, in Leavenworth, Kansas, violated his constitutional rights.  Mr. Thompson recites the following as examples of the depth and severity of conditions he allegedly experienced during his pretrial detainment:

> on-going situation of assaults, rapes, homicide, suicides[,] deprivation of medical/dental care, proper diet and exercise, contact with family, church[,] and counsel[,] threats and intimidation from staff and inmates, physical and severe psychological stress creating an atmosphere ripe for the development of clinically significant distress leading to post-traumatic stress disorder (PTSD) and bouts of anxiety/depression.

*Id.*  Mr. Thompson asks the court "to reduce his sentence by two years due to the time spent in presentence status and the atrocious conditions[.]"  *Id.* at 33.  But there's a problem.

Mr. Thompson brought his motion under the First Step Act—specifically 18 U.S.C. § 3582(c)(1)(A).  A motion under the First Step Act isn't the proper vehicle for these constitutional claims.  *United States v. Lougee*, No. 14-20068-05-DDC, 2022 WL 2064893, at *2 n.3 (D. Kan. June 8, 2022); *United States v. Quijada-Castillo*, No. 3:19-CR-20-CRS, 2021 WL 1930710, at *4 (W.D. Ky. May 13, 2021) ("Redress for perceived cruel and unusual punishment is not properly sought under the First Step Act's compassionate release provision, as the statute does not contemplate a reduction in sentence or release to compensate for past government actions."); *United States v. Pooler*, No. 3:18-cr-00137, 2020 WL 7046964, at *7 (S.D. Ohio Dec. 1, 2020) ("[T]o the extent that [petitioner] is arguing that his Motion should be granted due to the Eighth Amendment's prohibition on the infliction of cruel and unusual punishments . . . , a compassionate release motion likewise is not the appropriate mechanism or vehicle to raise such

a claim of alleged constitutional violations.").  The court thus declines to consider this part of Mr. Thompson's motion.

With that threshold issue resolved, the court now turns to Mr. Thompson's request for compassionate release based on his health and COVID-19—a request properly brought under the First Step Act.  The court begins its analysis by examining whether Mr. Thompson exhausted his administrative remedies.

### A.  Exhaustion of Remedies

The government argues that the court should deny Mr. Thompson's motion because he failed to exhaust his request for release based on family circumstances.  To evaluate this argument, the court begins with a brief discussion of the First Step Act's exhaustion requirements.  To modify a sentence on "motion of the defendant[,]" the court may do so only "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf[.]"  18 U.S.C. § 3582(c)(1)(A).  It also may entertain such a motion from a defendant after "the passage of 30 days from the defendant's unanswered request to the warden for such relief."  *Maumau*, 993 F.3d at 830.  The government doesn't dispute that Mr. Thompson complied with the procedural aspect of these requirements. Instead, the government takes issue with the substance of Mr. Thompson's requests to the warden.

The government asserts that Mr. Thompson failed to exhaust his administrative remedies because he hasn't demonstrated that he presented his family circumstances argument to the warden.  The court agrees.  To satisfy the administrative exhaustion requirement, the "request to the warden need not be identical in detail or specificity to the motion made in court."  *United States v. Moreno*, 519 F. Supp. 3d 937, 940 (D. Kan. 2021) (citing *United States v. Knight*, No. 1:15-CR-393, 2020 WL 4059886, at *2 (M.D.N.C. July 20, 2020)).  But the basis for a

defendant's request for compassionate release to a district court must overlap with the basis of his request to the warden.  *Id.* (citing *Knight*, 2020 WL 4059886, at *2); *see also United States v. Gieswein*, 832 F. App'x 576, 577–78 (10th Cir. 2021) (holding that inmates must exhaust administrative remedies for each issue they later take to court).

In his request to the warden, Mr. Thompson asserted that his extraordinary and compelling circumstances were "Elderly with Medical Conditions" including "[l]iver, thyroid, arthritis, cat[a]ract, cholesterol and dental issues[,] family history of cancer and heart attacks[,] COVID concerns due to pneumonia hospitalizations[, and] herniated dis[c]."  Doc. 109-8 at 2. He also asserted "pretrial conditions" as another reason.  *Id.* at 4.  In his motion to the court, Mr. Thompson asserts that his "compromised immunological system and other chronic medical conditions defined by the Center for Disease Control (CDC) as being in a class susceptible to severe perman[e]nt illness and/or death from COVID-19[,]" the "pretrial custody at the hands of a private contractor and the atrocious conditions suffered thereunder," and "circumstances on the issue of primary-care-giver" all support his request for compassionate release.  Doc. 109 at 1.

The medical issues and pretrial conditions discussed in Mr. Thompson's motion aren't identical to his earlier request, but they overlap enough to demonstrate that he has exhausted his administrative remedies on these issues.  But the final argument about Mr. Thompson's need to serve as primary caregiver for his son doesn't appear in any of the documents presented to the Bureau of Prisons and included with his motion.  Mr. Thompson argues that the primary caregiver issue arose during the intervening time between when he filed his initial request to the Bureau of Prisons and when he filed his motion with the court.  That may be so, but it doesn't change the exhaustion requirement.  Mr. Thompson must raise the family circumstances arguments in a request to the warden to meet the statute's exhaustion requirements on that issue.

*Gieswein*, 832 F. App'x at 577–78.  So, Mr. Thompson hasn't fully exhausted his family circumstances arguments.

Because exhaustion isn't jurisdictional, if the government wants the court to dismiss his family circumstances arguments based on failure to exhaust, it must raise the issue in its response.  *Hemmelgarn*, 15 F.4th at 1031.  Here, the government introduced the argument in its opposition memorandum, Doc. 111 at 5–7, so the court needn't address the merits of Mr. Thompson's family circumstances arguments and thus dismisses that part of his motion.  But because Mr. Thompson has exhausted his administrative remedies fully on his health issues and pretrial conditions arguments, the court, below, addresses the merits of those arguments.

### B. Extraordinary and Compelling Reasons

The court now applies the first step of the compassionate release framework:  whether Mr. Thompson presents "extraordinary and compelling" reasons for compassionate release.  Mr. Thompson asserts that the COVID-19 pandemic presents an increased risk to him because of numerous factors:  hepatitis C, age, gender, tobacco use, mental health, substance abuse, cholesterol, hypertension, and several chronic physical conditions.  Doc. 109 at 9–13.  Mr. Thompson contends that his comorbidities make him more susceptible to COVID-19 than an average prisoner.  The government argues that Mr. Thompson lacks documentation for several of his asserted health risks, and his vaccinations mean "his risk of alleged complications has dramatically decreased."  Doc. 111 at 23.

The court concludes that Mr. Thompson's health, combined with the COVID-19 pandemic, do not present extraordinary and compelling reasons.  The Center for Disease Control ended the federal COVID-19 Public Health Emergency Declaration on May 11, 2023.  *End of the Federal COVID-19 Public Health Emergency (PHE) Declaration*, Ctrs. for Disease Control & Prevention (Updated Sept. 12, 2023), https://www.cdc.gov/coronavirus/2019-ncov/your-

health/end-of-phe.html.  Our Circuit has held that the "'mere existence of COVID-19 in society

and the possibility that it may spread to a particular prison alone cannot independently justify

compassionate release.'"  *United States v. Purify*, No. 20-5075, 2021 WL 5758294, at *4 (10th

Cir. Dec. 3, 2021) (quoting *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020)).

And, critically, Mr. Thomas has received the COVID-19 vaccine.  Doc. 109 at 26; Doc.

111 at 12.  The CDC has recognized certain medical conditions increase a person's risk of severe

complications from COVID-19.[3]  But, the CDC also has explained that the COVID-19 vaccine is

a safe and effective way to protect against COVID-19 and the serious conditions that come with

a COVID-19 infection.[4]  And, our Circuit repeatedly has held—albeit in unpublished opinions—

"that a defendant who receives and benefits from the COVID-19 vaccine fails to establish

extraordinary and compelling reasons warranting a sentence reduction."  *E.g.*, *United States v.*

*Gutierrez*, 2023 WL 1975076, at *3 (10th Cir. Feb. 14, 2023) (citing *United States v. McRae*,

No. 21-4092, 2022 WL 803978, at *2–3 (10th Cir. Mar. 17, 2022) (citation omitted)).  Several

district courts in our Circuit—including this one—have adhered to this direction from the

Circuit.  These courts have concluded that if a defendant has had access to the COVID-19

vaccine, incarceration, even *during* the pandemic, doesn't qualify as an extraordinary and

compelling reason for a sentence reduction.  *See United States v. Read-Forbes*, 2023 WL

6961985, at *8 (D. Kan. Oct. 20, 2023) ("[T]he prevailing scientific view is that even vaccinated

individuals with medical comorbidities do not have a significant risk of severe disease or death if

---

[3]     *See* CDC, *People with Certain Medical Conditions* (updated May 11, 2023),
https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html
(last visited October 13, 2023).

[4]     *See* CDC, *Benefits of Getting A COVID-19 Vaccine* (updated Sept. 22, 2023),
https://www.cdc.gov/coronavirus/2019-ncov/vaccines/vaccine-benefits.html (last visited October 13,
2023); *see also* CDC, *COVID-19 Vaccine Effectiveness Update* (updated Aug. 31, 2023),
https://covid.cdc.gov/covid-data-tracker/#vaccine-effectiveness  (last visited October 13, 2023).

they contract COVID-19."); *United States v. Everhart*, No. 18-20031-01-DDC, 2022 WL 6101441, at *3 (D. Kan. Oct. 7, 2022); *United States v. Middleton*, No. 15-40018-02-DDC, 2022 WL 2918148, at *3, (D. Kan. July 25, 2022); *United States v. Maynard*, No. 18-cr-00395-CMA, 2022 WL 2077951, at *2 (D. Colo. June 9, 2022); *United States v. Smith*, No. 2:13-cr-00776, 2022 WL 1422197, at *6 (D. Utah May 5, 2022); *United States v. Oaks*, No. 18-cr-00470-PAB-11, 2022 WL 1081148, at *2 (D. Colo. Apr. 11, 2022); *United States v. Duran*, No. 1:15-CR-27 TS, 2022 WL 844433, at *1 n.3 (D. Utah Mar. 22, 2022).

The court thus concludes that Mr. Thompson hasn't demonstrated extraordinary and compelling reasons for his release. But even if he had, Mr. Thompson's motion still would fail at the third step of the compassionate release inquiry: the § 3553(a) sentencing factors. The court applies these factors to Mr. Thompson in the next section.

### C.  Section 3553(a) Factors

Before the court may reduce a defendant's term of imprisonment under § 3582(c)(1)(A), the court must consider the relevant sentencing factors under § 3553(a). Those factors include: (1) defendant's personal history and characteristics; (2) his sentence relative to the nature and seriousness of his offenses; (3) the need for a sentence to provide just punishment, promote respect for the law, reflect the seriousness of the offense, deter crime, and protect the public; (4) the need for rehabilitative services; (5) the applicable guideline sentence; and (6) the need to avoid unwarranted sentencing disparities among similarly-situated defendants. *See* 18 U.S.C. § 3553(a).

The court has reviewed Mr. Thompson's admirable efforts at rehabilitation. The court also has reviewed the letters of support Mr. Thompson has submitted from his friends and family. Mr. Thompson's accomplishments and goals are commendable. But the court must weigh this information against other facts relevant to the court's analysis of the sentencing

factors.  And those other facts simply don't support the significant reduction that Mr. Thompson seeks.

Mr. Thompson has an extensive prior criminal history, as his presentence report documents.  His background presents a regular history of criminal activity in municipal, state, and federal court stretching back nearly 40 years.  Doc. 90 at 10–14.  That history includes two convictions in federal court involving the same behavior that he's imprisoned for now.  *Id.* at 11–13.  In each one of those cases, the court revoked his supervised release and confined him to serve an additional sentence.  *Id.*  So, Mr. Thompson's personal history doesn't favor compassionate release.

Mr. Thompson's current sentence reflects the nature and seriousness of his offense, the need for punishment and to promote respect for the law, and the need for rehabilitative services. Mr. Thompson committed a serious felony offense.  And this is the third time Mr. Thompson has received a sentence for distributing or conspiring to distribute methamphetamine.  Mr. Thompson also received a sentence below the guideline range.  The presentence investigation determined that the guideline range for Mr. Thompson's offense was 292 to 365 months.  Doc. 90 at 20 (Presentence Investigation Report ¶ 99).  But, based on the plea agreement he reached with the government, the court instead sentenced Mr. Thompson to just 144 months, far below the prescribed sentencing range.  *Id.* (Presentence Investigation Report ¶ 100).  A further reduced sentence would not reflect the nature and seriousness of Mr. Thompson's offense because it would alter the appropriate sentence radically.  While Mr. Thompson has accepted responsibility for his actions and expresses remorse, if the court were to reduce his sentence as he requests, it would create considerable disparity among similarly situated defendants because Mr. Thompson has benefitted from a sentence far below the lower end of the range.  The court took these factors

into account when it decided Mr. Thompson's sentence. *See* Docs. 90, 98. And nothing from the intervening period since his sentencing hearing warrants revisiting Mr. Thompson's current sentence. In sum, the § 3553(a) factors don't favor Mr. Thompson's early release.

Mr. Thompson requests that the court, in the alternative, allow him to serve the rest of his sentence in home confinement. He argues that he's a "a non-violent offender . . . with a low percentage of recidivism scored by the DOJ and USSG's age factor, with no record of past violence." Doc. 119 at 31. But Mr. Thompson's prior criminal history with supervised release does little to convince the court that home confinement presents a realistic or prudent option here. The court twice has revoked Mr. Thompson's release. Thus, the court declines to grant Mr. Thompson's request for home confinement.

## V.    Conclusion

As explained above, the court denies Mr. Thompson's Motions for Appointment of Counsel (Docs. 110, 114). And the court denies Mr. Thompson's Motion for Compassionate Release (Doc. 109) for two independent reasons: (1) he doesn't present extraordinary and compelling reasons for compassionate release, and (2) the § 3553(a) factors don't favor compassionate release.

**IT IS THEREFORE ORDERED BY THE COURT THAT** Mr. Thompson's Motion for Appointment of Counsel (Doc. 110) and Renewed Motion for Appointment of Counsel (Doc. 114) are denied.

**IT IS FURTHER ORDERED BY THE COURT THAT** Mr. Thompson's family circumstances arguments advocating for compassionate release based on his son's health conditions are dismissed.

**IT IS FURTHER ORDERED BY THE COURT THAT** the remainder of Mr. Thompson's Motion for Compassionate Release (Doc. 109) is denied.

**IT IS SO ORDERED.**

**Dated this 31st day of October, 2023, at Kansas City, Kansas.**

<u>s/ Daniel D. Crabtree</u>
**Daniel D. Crabtree**
**United States District Judge**